### SISSON *v.* YOST *et al.*

*(Supreme Court, General Term, First Department. December 29, 1890.)*

**1. EVIDENCE—COMPETENCY.**
    The defense to an action for services was that they were rendered to a certain corporation, and not to defendants. A witness for defendants, who was the secretary and treasurer of the corporation, and also attorney for it, after testifying in regard to a resolution passed by the corporation suspending the employment, "if any exists," of plaintiff, and which was in witness' handwriting, was allowed to state that he was under the impression that the company was not liable to plaintiff. *Held,* that this was incompetent, and prejudicial to plaintiff.

**2. WITNESS—CREDIBILITY.**
    On a direct conflict between the testimony of plaintiff and that of defendants, an exemplified copy of a record of conviction of defendants of perjury was admitted in evidence, containing at the end a statement under a certain date, "Copy of pardon filed." *Held,* that testimony of defendants showing the promptitude with which the pardon was granted, the reasons why it was granted, and the time when it was discharged, was admissible.

Appeal from circuit court, New York county.

Action by Henry P. Sisson against George W. N. Yost and Virgil W. Blanchard. Defendant Yost appeals from a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*C. G. Patterson,* for appellant. *Rudd & Hunt, (James M. Hunt,* of counsel,) for respondent.

BRADY, J. This action was brought against the appellant and one Blanchard, composing the firm of Yost & Blanchard, to recover the balance due for services rendered to them by the plaintiff as a draughtsman, between

October 6, 1883, and December 1, 1885, at an agreed salary of $57.70 per week. The summons was served upon Yost only. He admitted in his answer the existence of the copartnership during the period when these services were alleged to have been rendered, but set up as a defense that they were rendered by the plaintiff to a corporation named the "Blanchard Electric Light & Power Company." Upon the trial it was practically conceded that the services had been rendered, and at the salary agreed upon. The issue, however, was whether they were rendered for the copartnership or for the company named. During the trial, the defendant called as a witness Philip Carpenter, a member of the bar, and a lawyer by profession. He had been a trustee and secretary and treasurer of the company named, for about two years. He preceded the plaintiff as secretary, and the defendant Yost as treasurer, and became the attorney for the company. He assumed to act as such, at the same time that he became secretary and treasurer. That was before December, 1886, but was continued until April, 1888. The attention of the witness was called to a page of a book called the "Record of the Blanchard Electric Light & Power Company." The resolution contained on this page, which had been passed by the company, was in his handwriting, and was offered in evidence. It is as follows: "Motion carried suspending the employment, if any exists, of R. D. Warner, Geo. W. Wanson, and H. P. Sisson, with full power granted to vice-president and secretary, to employ them temporarily, as the interests of the company may seem to require." He testified that Mr. Sisson was present at the time the resolution was adopted. He was asked whether anything was said by Mr. Sisson, or to him, or in his presence, why that resolution was passed, and he answered, "Yes, sir." He thereupon, in answer to a question propounded, proceeded to state that Mr. Sisson had made a claim at different times, that the company owed him for services; and that his salary was a certain amount which he did not at that time recollect; and that the resolution as far as he was concerned in voting for it was intended to suspend any further claim of that kind on his part. He further stated that he was quite sure he sent a copy of the resolution to Mr. Sisson. Upon cross-examination he was asked, "Do you recall putting in the words 'if any exists?'" and answered, "I do not at this moment recall the circumstances which led me to put those words in that resolution." And this was followed by this question: "Is it not a fact that you were under the impression that the company was not liable at all?" That question was objected to as incompetent, irrelevant, and immaterial. The objection was overruled, and the defendant excepted. The witness answered: "I was of that impression." It will be remembered that the issue which was in process of investigation was whether the company or the defendants in this action were liable for the services which were rendered, and for which the plaintiff sought to recover, and that Carpenter had been secretary and treasurer and the lawyer of the company. Indeed, he was, besides, the attorney of the company in an action brought against it by the plaintiff. All these circumstances, taken into consideration, appear to lead to but one conclusion, and that is that the question should not have been allowed. It contained a suggestion that the company were not liable, thus directly affecting the issue to which attention has been called, and which was confirmed by the answer, namely: "I was of that impression." The jury had been impaneled for the purpose of deciding which was liable, the company or the defendants; and the conclusion was to be dependent upon competent testimony; not upon impressions with regard to the liability of the company or the defendants, but upon facts. It is impossible to say that the admission of that evidence worked no prejudice in consequence of the triple character of Mr. Carpenter, namely, lawyer, secretary, and treasurer; and for this reason, even if no other existed, the judgment should be reversed, and a new trial ordered. But there is still a serious objection to be considered.

The defendant Yost had testified in the cause, and the learned judge, in submitting the case to the jury, said that Messrs. Blanchard and Yost, the defendants, had both testified on their own behalf, each one of them denying that he ever had such conversation with the plaintiff, as stated by the latter, in reference to an agreement to employ him, and pay him the amount of money stated as salary, or any other sum, from their own pockets, and he said to the jury: "You see that there is a direct, irreconcilable conflict of testimony; that either the plaintiff or Yost and Blanchard are very much mistaken in regard to this alleged interview. The plaintiff was certain that there was an interview, and that they had this conversation. The two defendants positively deny there was any such interview, or any such conversation." During the trial, the defendant Yost, on cross-examination, was asked to look at a paper presented to him, and to say if he was the person mentioned in it. It was objected to, but withdrawn. The paper purported to be an exemplified copy of the record of the indictment and conviction of Yost of perjury in the United States court of Pennsylvania; and the court, having examined it, overruled the objections to its informality and insufficiency, and the paper was put in evidence under the defendants' exception. Mr. Yost was then recalled and examined in reference to the conviction to which the exemplified copy spoken of referred. He was asked: "Who was president of the United States at that time?" It was objected to as irrelevant, incompetent, and immaterial. The objection was sustained, and the defendant excepted. He was then asked: "When did the president of the United States at that time grant you a pardon of the alleged offense?" To which there were the same objection, ruling, and exception. He was then asked: "What were the reasons given to the president of the United States for the granting of your pardon?" The same objection, ruling, and exception. Then followed the question: "Did you go to jail under that conviction? How long were you in jail under that conviction?" both of which were excluded, and exceptions taken. The so-called "exemplified copy" contained this statement at the end of it: "Sept. 26, 1872. Copy of pardon filed." It did not appear when the pardon was filed, nor did it state. It did not show when the original pardon was granted, or when it was delivered to, and accepted by, the defendant, as will have been seen. It only mentions when the copy was filed in the clerk's office. The object of these questions was to show—indeed it must be so assumed—the promptitude with which the pardon itself was granted, the reasons why it was granted, and the time when the defendant was discharged. All these facts would necessarily have had a very important bearing on the question of the credibility to be given to the witness. It may be assumed for the purposes of this exception that these questions would have demonstrated his innocence, or a due sense of the impropriety of the conviction to which the record refers. It was held in *Sims* v. *Sims*, 75 N. Y. 466, that, if such a record as that mentioned was competent, it was not conclusive as to the fact of the commission of the crime charged, but might be rebutted. In that case, the witness having testified as a witness in his own behalf, a record of his conviction in the state of Ohio for a felony was offered by the plaintiff, and received in evidence. The defendant was thereupon asked by his counsel whether he was guilty of the offense of which he had been convicted. This was objected to and excluded, and erroneously, as decided by that adjudication. The principle of that case applies here. The defendant had a right to show the circumstances under which the pardon was granted, which the questions objected to and excluded were designed to accomplish; and for that reason, if no other existed in the case, calling for such a determination, a new trial should be granted. Ordered accordingly, with costs to abide the event.

DANIELS, J. I agree to the result on the objection first examined.

VAN BRUNT, P. J., concurs.